GEORGE WYKES v. PETER RINGLEBERG.

*Removal of lateral support—Jurisdiction.*

A bill to enjoin defendant from destroying the lateral support to complainant's land by removing earth from premises belonging to defendant's wife, must implead the wife, or her interest will not be bound by any adjudication. But an action at law, as for a tort, might be against the husband, whoever held title to the premises.

Where the fundamental question in a controversy over the removal of lateral support is the true line between the parties and the legal title to a disputed strip of land, the case is properly cognizable at law and not in equity.

Appeal from the Superior Court of Grand Rapids. Submitted November 1. Decided January 5.

BILL for injunction. Complainant appeals. Affirmed.

*William E. Grove* for complainant.

*J. W. & O. C. Ransom* for defendant.

GRAVES, C. J. Complainant and defendant's wife are owners of two parcels of land in the city of Grand Rapids supposed to be adjoining. The parcel of Mrs. Ringleberg abuts Wealthy avenue on the north and Grandville avenue on the west, and the premises of complainant lie immediately east and also abut Wealthy avenue on the north and are supposed to be divided from Mrs. Ringleberg's land by a line running south or southerly from that avenue. As a consequence of the grading of these streets the surface of these parcels is left six or seven feet above the grade. The complainant occupies his parcel as a dwelling-place, and he resides in a house standing upon it and being several feet from the true line on the west, wherever in point of fact that line may be.

The defendant, acting in accordance with his wife's purpose to apply her parcel to business uses, began the lowering

of it to the level or near the level of the street.    The com—
plainant supposed the defendant to be the owner instead of
his wife, and he informed the defendant that he was·
opposed to what defendant was doing.    He claimed that if
the lowering of the earth was carried on up to his own line
it would deprive his land of the natural support incident to·
its ownership and cause him damage.    He consequently
objected to any continuance of the excavation as an infringe—
ment of his right to lateral support for his land from the·
land adjoining.    The defendant refused to desist and com-·
plainant filed his bill to enjoin him.

The bill alleged complainant's ownership in fee from
August, 1870, and his actual possession of his parcel, which,
he identified and described as being

"all of a certain piece or parcel of land lying and being·
situate in the city of Grand Rapids, Kent county, Michi-
gan, upon what is known as Grant's addition to said city,
particularly known and described as a piece of land lying
west of lot number four (4) block number fifteen (15) of
said Grant's addition, commencing at a point ninety (90)·
feet east from the center of the Grandville road so called
on the south line of Wealthy avenue, running thence·
easterly a distance of forty (40) feet to the division line of
lands heretofore sold to Arthur B. Wykes, thence southerly
at right angles with last line one hundred and thirty (130)·
feet, thence westerly and at right angles with last line forty
(40) feet, thence northerly and at right angles with last line·
one hundred and thirty (130) feet to the place of begin-
ning."

The bill further alleged that in regard to the pressure the·
west side was in the same condition as left by nature ; that.
the dwelling-house and improvements were about ten feet:
from the west line and by reason of such distance did not.
increase the lateral pressure at the line of junction.    The·
bill likewise alleged that complainant's land was bounded
on the west by land lately bought by defendant and which
at that time and also at the time of complainant's purchase·
was a high natural bank and in its natural state and afforded
a natural support to complainant's land ; but that defend—
ant had begun to dig and take away and for many days had
been engaged in digging and taking away the earth from·

said land he had so purchased so near the boundary line that the soil had been made to cave and fall away in many places along said boundary, near thereto and across the same, and that if the defendant were suffered to carry said work nearer to said complainant's land the western part of it would fall over into the excavation and upon the land of defendant whereby complainant's land and his estate therein would be greatly injured, destroyed and damaged beyond recompense. The bill further stated that complainant had desired the defendant to stop, but that the latter declared his purpose to carry his excavation to complainant's line. The remaining contents of the bill were only formal matters.

An *ex parte* injunction was allowed by a circuit court commissioner.

The defendant answered and admitted that complainant was owner in fee-simple and in possession of the land described as his in the bill. He denied however that it remained as left by nature without artificial weight to affect the lateral pressure and averred that the house was nearer the line than stated in the bill and was so near as to exert a pressure on all the land between it and complainant's west line. He denied having at any time bought the land adjoining that of complainant on the west and averred that his wife, Sarah Ringleberg, was owner in fee of the premises there situate and had been for a long time prior to the filing of the bill. He admitted that said land of his wife was on about the same level as that of complainant and that both parcels were in consequence of the grading and improvement of Wealthy and Grandville avenues, left some five or six feet above the grade of those streets, and that his wife's parcel was in that way and to that extent a high bank, and being on or about the same level as complainant's parcel, the latter, on its western limit, was supported by it, if any such support was necessary. He admitted removing the earth from his wife's land at and prior to the filing of the bill, but averred that it was entirely lawful for him to do so, and denied having excavated so near the line as to cause the soil

in any place along it to fall across, as stated in the bill. He also denied that removal of the earth nearer the west side of complainant's land would cause any part of that land to fall over into the excavation or would cause complainant any injury. He further denied having threatened to remove the earth up to complainant's west boundary and averred that the wall of excavation nearest to complainant's line was about seven feet distant at the bottom and about five at the surface, and that to the depth of six or eight inches the soil is a clay loam and from that point down is clay hard-pan so compact as to require the use of a pick to disturb it.

The answer also set forth the grading of the two avenues and that Grandville avenue is already a business street where his wife's land is, and is from year to year acquiring additional importance for business purposes; that the premises are far more valuable to the owner for commercial uses than for residence and that the enjoyment for such uses necessitates the lowering of the land to nearly the level of the streets, and that the alteration begun by defendant had been carried on and was being conducted in a careful and prudent manner so that no injury had resulted or could result to complainant therefrom. The defendant also averred that it was entirely lawful for him, as the premises were situated, to reduce the same to a grade with the streets, and, in conclusion he alleged, by way of demurrer, that the matters stated in the bill were cognizable at law and not in equity.

The complainant filed a general replication but subsequently prayed leave to withdraw it and for permission to amend the bill. The court allowed the application and complainant's description of the premises claimed by him was changed so as to read as follows:

" all of a certain piece or parcel of land lying and being situate in the city of Grand Rapids, Kent county, Michigan, upon what is known as Grant's addition to said city, particularly known and described as a piece of land lying west of lot number four (4) block number fifteen (15) of said Grant's addition and being forty (40) feet wide, east and west, and one hundred and thirty (130) feet long north and

south, in rectangular form, bounded on the north by the south line of Wealthy avenue, and on the east by the west boundary line of land heretofore sold by Franklin R. Osgood and wife to Arthur B. Wykes, which said west boundary line of said Arthur B. Wykes' land extends south from a point, in the south line of Wealthy avenue, which is one hundred and twenty-six and one-half (126½) feet east from the center of Grandville avenue, and at right angles with said south line of Wealthy avenue."

The same alteration was made in the description contained in the prayer for injunction.

No other amendment was made except to insert in the statement in regard to the purchase of the parcel on which the excavation was going on, the words "in the name of Sophia Ringleberg, his wife," so as to change the statement from one alleging that complainant's land was "bounded on the west by land lately bought by one Peter Ringleberg, the defendant hereinafter named," to a statement alleging that complainant's land was "bounded on the west by land lately bought by one Peter Ringleberg, *in the name of Sophia Ringleberg, his wife*, the defendant hereinafter named."

The defendant made answer and denied that complainant owned in fee-simple the land specified in the amendment, and averred that complainant neither owned nor was interested in any premises west of lot four of block fifteen of Grant's addition and adjoining the premises of Sophia Ringleberg on the east, referred to in the former answer to the bill as filed, other than those described by complainant in his first bill. The complainant replied and the parties went into proof and the court on final hearing dismissed the bill.

Under the view taken of the controversy, it has seemed advisable even at the risk of being tedious to present the case with fullness as it stands upon the pleading. The effect is that sufficient reasons against disturbing the decree appealed from may be made plain without extended explanations.

It is obvious that the bill is not planned to enjoin irreparable injury from repeated acts of trespass, nor to settle confused boundaries. The case is not framed on the prin-

ciple of either of these heads of jurisdiction and the suit
was not launched on any such theory nor with any such end.

The acts of grievance are alleged to have been done on
land not belonging to complainant nor in his possession, and
the elements necessary to a case to prevent trespass are want-
ing. Adams' Eq. 207; Hilliard on Inj. 279 et seq., and cases.
And as to any dispute in regard to boundary or any confu-
sion of boundary the bill is profoundly silent, and no ground
of equity is set up on any such hypothesis. Story's Eq.
Jur. §§ 617, 618, 619. Indeed it is just to say that counsel
have made no claim for relief under either of these heads.

The ostensible object of the bill was 1st, to have it deter-
mined that complainant as owner of the area marked out
by his amendment was thereby possessor of the right to have
the west border kept in its natural place by means of lateral
support from the land belonging to defendant's wife; and
2nd, to have that right enforced by injunction.

The matter to be first noticed is that although the assumed
purpose for which the suit is prosecuted is to have it judi-
cially determined that the land of defendant's wife is subject
to a right in complainant to require that it shall continue in
a natural condition in order that it may contribute hereafter
as heretofore to the lateral support of his land, yet she is
not made a party and her right is not represented on the
record. It seems clear that without her presence as a party
the litigation could not help being practically futile. Her
interest in respect to the *locus in quo* could not be found or
affected by any adjudication in the case. 1 Daniel's Ch.
Pr. 209, 262. Nothing more could be accomplished than
the imposition of a restraint on the defendant, and leading
features in the policy of equity jurisdiction would be disre-
garded. Neither a full determination would be obtained
nor a foreclosure of further contention. The strife might
be renewed immediately. The final right would not be
bound and no hands except the defendant's would be tied.

The case would stand on a principle entirely different if
it were an action of tort against the defendant to recover
damage. His liability would not depend on his ownership

and whether the title were in him or in his wife would make no difference. The ground of action and the principles of jurisdiction would be wholly unlike what they are now.

But a further difficulty exists. It has turned out that the fundamental question concerns the legal title to the land where the support is called for by complainant. The parties are in dispute as to where the true line is between the holdings. A strip of several feet in width is claimed by each, and complainant's counsel admits that if the line is where the defendant contends that it is, the excavation has not approached nearer than about eight inches.

It seems evident that the substantial controversy is merely a difference about the legal ownership of a narrow piece of ground, and is rightly cognizable at law; and that even if Mrs. Ringleberg were a party, the circumstances as disclosed would not warrant a transfer of the contention to a court of equity. *Devaux v. City of Detroit* Har. Ch. 98; *Blackwood v. Van Vleet* 11 Mich. 252.

The decree below should be affirmed with costs, but without prejudice to bringing a proper action for damages or an action to decide the question of boundary if the complainant shall be advised to bring any such action.

The other Justices concurred.