EMIL A. TAPERT v. DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY COMPANY.

*Right of way—Right of abutting owner to private way.*

A land owner agreed to convey to a railway company a strip of land, part of which was to be occupied by its track, and part used for a public street, but the whole to revert absolutely on breach of condition. He afterwards made a plat on which this strip was marked as a street, and in acknowledging it, provided that it should remain a street if the company performed its obligations, but if not, it should instantly revert. After his death his estate was partitioned, except the railway strip, and one of the partitioners received certain premises abutting thereon, which he sold. This partitioner afterwards obtained grants from the rest of the heirs, and conveyed the strip to the railway company unconditionally A subsequent grantee of the premises which he had previously sold claimed a right to use the street, where the track lay, as a private way appurtenant to his lots, and sought to enjoin the company from occupying it with another track. *Held* that the bill for injunction would not lie; the plat had been made with reference to a way that had never been unconditionally dedicated, and the premises occupied by the way had afterwards been unconditionally conveyed to the railway company, and became its private property, before complainant's title had passed out of a representative of the estate.

Private owners of lots can get no better right of way over premises on which the lots abut, than that which was offered to the public for acceptance in the dedication thereof for public uses; though the public's non-acceptance of an offer to dedicate may still leave private rights of way in the land so offered.

A right of way cannot be granted by deed, estoppel, or otherwise by any one but the land owner; a mere equitable owner of an undivided interest in a possible reversion cannot give it, and it cannot well exist over an undivided interest alone.

Relief granted a complainant by a decree from which he has appealed
   cannot be enlarged in affirming the decree on review, if the defend-
   ant did not also appeal.

Appeal from the Superior Court of Detroit.   (Chipman,
J.)   April 4.—April 11.

INJUNCTION bill.   Complainant appeals.   Affirmed.

*George Gartner* for complainant.   Where land is con-
veyed according to a recorded plat, the plat governs the
deed : *Paddack v. Pardee* 1 Mich. 426; *Kennebec v. Tif-
fany* 1 Greenl. 219 ; *Makepeace v. Bancroft* 12 Mass. 409 ;
*Bower v. Earl* 18 Mich. 376 ; *Johnstone v. Scott* 11 Mich.
239 ; *Allen v. Bates* 6 Pick. 460 ; *Waterman v. Johnson* 13
Pick. 261 ; and where it is conveyed with boundary on the
street, the grantor and all other subsequent claimants under
him are estopped from denying the existence of the street or
shutting it up : *Sinclair v. Comstock* Har. Ch. 404 ; *Smith
v. Lock* 18 Mich. 56 ; *White v. Smith* 37 Mich. 291 ; *Kar-
rer v. Berry* 44 Mich. 391 ; *Espley v. Wilkes* L. R. 7 Exch.
298 ; *Farnsworth v. Taylor* 9 Gray 162 ; *Rodgers v. Parker*
id. 445 ; *Fox v. Union Sugar Refinery* 109 Mass. 292 ;
*Morgan v. Moore* 3 Gray 319 ; *Lunt v. Holland* 14 Mass.
149 ; *Davis v. Rainsford* 17 Mass. 207 ; *Parker v. Bennett*
11 Allen 388 ; *Murdock v. Chapman* 9 Gray 156 ; the
grantee is entitled to the full width of the street as repre-
sented on the plat: *Brown v. Stone* 10 Gray 61 ; but contra,
*Grand Rapids & Ind. R. R. v. Heisel* 38 Mich. 72 ;  a court
of equity will enjoin encroachment upon the privileges of
private estates : *Pratt v. Lewis* 39 Mich. 10 ; *King v. Car-
penter* 37 Mich. 366 ; High on Injunctions §§ 544, 565 ; 2
Story's Eq. Jur. (12th ed.) §§ 844, 929, 956 ; *Webber v. Gage*
39 N. H. 187.

*George Jerome* and *Geo. V. N. Lothrop* for defendant,
argued that if the conveyance to complainant carried any
right of way over the premises deeded to the railway com-
pany, it was only such a limited right as might be exercised
subject to all needful railway uses : *Harding v. Wilson* 2 B.

& C. 96; *Johnson v. Kinnicutt* 2 Cush. 156; *Walker v. Worcester* 6 Gray 548; *Bakeman v. Talbot* 31 N. Y. 370; *Atkins v. Bordman* 2 Met. 457.

CAMPBELL, J. Complainant filed his bill to prevent defendant from occupying the land used for its track in Detroit, by adding a second line of rails and narrowing the part of the land not used for the running of cars; his claim being that he has a right of way over it appurtenant to an adjacent lot.

The lot owned by complainant is lot 54, section 25, of what is known as the Antoine Dequindre farm, in the city of Detroit, and the strip of land over which the right of way is asserted is the same which was in dispute in the case of the *City of Detroit v. Detroit & Milwaukee Railroad Co.* 23 Mich. 173. In that case we held that the land was not a highway, and that the city of Detroit had no interest in it as such. It is now claimed that by holding a lot by reference to the plat under which that question arose, complainant has a private right of way without regard to the rights of the public.

A brief statement of the facts which are material will be sufficient to explain the points in issue.

In May, 1836, Antoine Dequindre was owner of one of the narrow and deep farms now within the city of Detroit, and next to a similar farm known as the Witherell farm. At that time he made an agreement to convey to the Detroit & Pontiac Railroad (of which defendant is a successor) a strip of 40 feet wide along the entire easterly side of his farm, to which the railroad was to add an equal width from the Witherell farm. Conditions were made that the land should be used by the railroad with one or two tracks at or on either side of the center line, and the remainder used as a public street, but that on breach of the conditions the land should revert absolutely to Dequindre and his heirs,—this reversion applying to the street uses as well as to the railroad uses.

In October, 1836, Dequindre made a conveyance of the farm to Peter J. Desnoyers, in trust to pay his debts, sub-

ject to this agreement. In February, 1840, Dequindre and Desnoyers made the plat in question, covering nominally the whole farm, in which the strip of land was marked Dequindre street. In the acknowledgment, however, it was provided that this land should remain a street provided the company performed its obligations, (which were not confined to this single matter,) and that " in the event of any breach or breaches on the part of said company in that behalf, that said street shall instantly revert to said Dequindre, his heirs and assigns, as his and their own private property, and that he shall take immediate possession thereof, in all respects as if the same had never been embraced in said plat."

This language indicates that the land in question was not considered as any part of the land transferred to Desnoyers, but was a separate portion the reversion of which was to belong to Dequindre or his estate. At this time he had made no conveyance to the company. In 1843 Dequindre died intestate, and in 1845 Desnoyers reconveyed to his heirs the land remaining unsold under the trust. Immediately thereafter a partition of the estate of Dequindre was had, and the lot in question was part of the portion set off to John Watson as representing an heir. The railroad strip was left unpartitioned. Lots 53 and 54, in section 25, were by Watson sold in 1847 to Alexander Davidson, through whom complainant holds under a series of mesne conveyances. These lots both abut on Dequindre street, and have no access to other streets except by a passage reaching them through the interior of the block.

In December, 1851, Watson, who had received grants from all the heirs, conveyed the strip of forty feet to the company unconditionally.

Complainant's claim now is that the deeds under which he holds containing reference to the plat, he has a right to the use of Dequindre street as a way appurtenant to his lots, independent of any public highway rights. And he relies on several decisions of this Court and other courts, holding that streets on which lots are sold become private ways in favor of the purchasers. The court below granted qualified

relief, which seems to have been based on this theory, but refused to prevent the defendant from laying a new track within certain limits.

It was distinctly intimated in the former decision referred to that whatever disposition was made by the plat of the land in Dequindre street was dependent entirely on the conditions and purposes of the arrangement with the railroad, and subject to entire defeat by any reversionary interest which the Dequindre estate might thereafter enforce. It is very clear that it contemplated, if any such reversion became operative, that it should become a complete and unembarrassed title in fee-simple to the land. It is utterly impossible, on any sound rule of construction, to hold that private owners of lots could get any better right of way than that which was offered to the public for acceptance. Non-acceptance by the public of an offer to dedicate may still leave private rights of way in the land so offered ; but inasmuch as the private right depends in such cases on the fact that a dedication has been attempted or asserted, the known conditions and limitations cannot be disregarded.

It was held in the former case that this plat placed Dequindre street on a different footing from all the rest, and created no dedication whatever under the statute. But the present record brings up some further difficulties. The title to the land in the street has never been treated as connected with the rest of the farm for general purposes. That was assigned to Desnoyers for sale. This was not treated as belonging to the trust at all. When Watson obtained title to this lot under the partition it was taken independently of and without regard to the street property. A right of way cannot very well be granted by deed, estoppel or otherwise, by any one but the land-owner. At the time when Watson conveyed to Davidson he owned at most in equity but an undivided interest in a possible reversion for condition broken. We need not now enquire whether such an interest could be transferred to him at all, if he had not been one of the holders of the legal title of which the railroad as yet had received no transfer. But how such a part

owner could charge the entire estate by an implied estoppel arising from his single act is not plain to us. A right of way cannot well exist over an undivided interest alone. The railroad company did not join in the plat. Desnoyers did not provide for any reversion to himself or his heirs or assigns. Dequindre had no title at law to the part of the farm which was divided into lots, when the plat was made, although he had a possible interest in the way of a resulting trust after his debts were paid. The severance was complete between this and the remaining part of the farm; and all this appeared on the plan itself. When the heirs subsequently transferred their interests with the legal estate, and it became thereafter unconditionally vested in the railroad, the whole title became merged and clear, so far as this record shows, and could only be hampered by the lawful action of some one who could bind the property. This could not be done by the owner of a single lot or of an undivided portion; and purchasers taking from him were bound to know that he could not, by a mere grant from himself of any such parcel, change the condition or hamper the enjoyment of the whole estate or any independent portion of it over which he had no dominion of his own.

We are unable, therefore, to see what right complainant has to interfere with the use of this land by the railroad for its lawful purposes. As defendant has not appealed, we need not inquire particularly into the relief granted, but we cannot give complainant any aid to enlarge it. He is in no way injured by the decree, and it must be affirmed, with costs.

The other Justices concurred.