LOUIS BRESLER AND CHARLES E. BRESLER v. SARAH M. PITTS ET AL.

*Boundaries—Cloud on title—Adverse possession—Forfeiture.*

1. The settlement of boundaries that are disputed and difficult of ascertainment is not on that account within the jurisdiction of a court of equity.

2. A boundary stated in a deed as "a line forty feet above the border of the river at high-water mark" is not ambiguous, and if disputed is to be fixed like any other fact, by testimony and an examination of the ground.

3. A cloud upon title cannot be created by the owner of the title and exist by his grant. And rights that may accrue to him from the grantor's continued occupancy after deeding the property, are not to be enforced in equity if the bill does not aver such possession as by lapse of time or otherwise would legally extinguish defendant's claim.

4. Where a deed contains a covenant to convey certain swamp land when defendant shall have drained it, but does not fix the time within which to do so, neither the grantor nor person claiming under him can take proceedings to forfeit such contract, or compel specific performance until they have put defendants in default after reasonable demand that they shall fulfill the condition.

Appeal from Wayne. (Full Court.) Oct. 15.—Nov. 4.

Bill to clear title, etc. Complainants appeal. Affirmed.

*D. C. Holbrook* for complainants.

*Henry M. Duffield* and *Isaac Marston* for defendants.

Campbell, J. Complainants, claiming to be owners of so much of the St. Amour farm above Detroit, as is not owned by defendants as heirs of Samuel Pitts, deceased, filed their bill—*first*, to settle the boundaries of their estate; *second*, to forfeit a contract for the conveyance of a part of the farm lying in a swamp; and *third*, to extinguish a right of way. The bill was dismissed for want of equity.

In May 1855 Eugene St. Amour, being the owner of a farm in Grosse Pointe, Wayne county, fronting on Detroit river, sold and conveyed to Samuel Pitts the front so as to include all between a line forty feet above the border of the river at high-water mark, and the channel of the river. This was conveyed unconditionally, as was also "a right of way four rods wide through the center of said claim to Jefferson avenue, or the road which makes a continuation of said avenue through said claim." The same deed contains the following provision: "The said parties of the first part do further covenant and agree with said Pitts, his heirs and

assigns, to convey and assure to him, his heirs and assigns, all the portion of said claim which is now swamp, and which lies below and southwest of a line drawn through the center of said claim from the Detroit river to said Jefferson avenue road, which conveyance is to be made as soon as said Pitts, his heirs, executors, administrators or assigns, shall have so drained said swamp on both sides of said line as to make it capable of producing grass."

Complainants set forth their own right in fee to all except the first parcel beginning forty feet from the river bank and extending to the channel, as derived " by the foreclosure of mortgages executed by said St. Amour and wife, and through several conveyances from and under him." There is no information as to the dates of any of these titles.

The bill then claims that the location of the forty feet line is uncertain and difficult of determination and that the parties dispute their boundaries.

Also that neither Pitts nor his heirs ever reclaimed the swamp, and it and the strip for a highway have always remained in possession of St. Amour and his grantees, adversely; that drains have been made by the drain commissioner and assessed on the land between Jefferson avenue and the river, and paid by complainants ; " that said drains made by said commissioner were worthless and of no benefit to said land, and your orators allege the fact to be that said swamp (so called) cannot be reclaimed by drains nor in any other way, as they believe."

The prayer is for a forfeiture of the contract, and an extinguishment of the right of way, and settlement of boundaries.

There is no jurisdiction in a court of equity to settle boundaries merely because disputed and difficult of ascertainment. The line fixed in the deed is one adopted by the parties themselves, and the place of high-water mark must be determined by testimony in any controversy that may be raised about it. There is no ambiguity about it. It is to be fixed, like any other fact, by examination of the ground. All streams, whether subject or not to much variation, are

liable to some, and this boundary reaches the highest water-mark which is not reached by some sudden and transient cause, as then capable of determination.

It is a new idea in equity jurisprudence to have grantors seek a forfeiture of their own grant, on account of their own disregard of their obligations. Without considering how far the continued occupancy of the grantor will be adverse to his own grant of a right of way, it is very certain that if he has any such right, it must be enforced in some other manner. But in regard to this, as well as to the swamp land, the bill shows on its face that the swamp through which the way runs is not capable of actual occupancy for any purpose as dry land, and apparently negatives any such adverse possession as would cut off legal rights. It does not appear when complainants went into occupancy of any of the estate or got title to it, and no such possession is averred as would legally extinguish any claim of defendants, by lapse of time or otherwise, so as to make it clear that complainants are in the right. That cannot be called a cloud upon a title which is created by the owner of the title and exists by his grant.

The same is to some extent true concerning the swamp land. Complainants by their own showing had full notice of defendants' rights, which were all created by the deed of the front. It is possible a bill might lie to compel the performance of the drainage or the surrender of the contract right. But, whatever may be defendants' rights to specific performance, inasmuch as no time is fixed for the work, neither complainants nor their grantors could move actively until they had in some way put defendants in default after reasonable demand to proceed. If the allegations in the bill are true, neither party could have suffered from the delay, in not reclaiming what they say is not reclaimable.

The bill makes out no equity and was properly dismissed.

The other Justices concurred.