# JUNE TERM, 1895.

CATHERINE ANDRIES v. THE DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY COMPANY.

*Easement—Railroad right of way—Boundaries—Equity jurisdiction.*

1. The mere fact that a railway company knows that the public and an abutting lot owner are passing and repassing over a portion of its right of way will not create a right in the public or in the lot owner to continue such passage.

2. The remedy to settle a disputed boundary line is at law, and not in equity, it appearing that each party claims a legal right, and that the land has never been adjudged to belong to the complainant.

Appeal from Wayne. (Donovan, J.) Argued January 22 and 23, 1895. Decided June 4, 1895.

Bill to restrain the defendant from trespassing upon complainant's land. Complainant appeals. Decree affirmed. The facts are stated in the opinion.

*Robert Parker* and *Jonas B. Houck,* for complainant.

*L. C. Stanley,* for defendant.

LONG, J. The complainant is the owner of lots 53 and 55 of the Dequindre farm in the city of Detroit. These lots abut upon the west side of defendant's right of way, commonly called "Dequindre Street," and are situate between Gratiot avenue and Jay street. She and her grantors have been in possession of them for many years. The bill in this case is filed to restrain the defendant from

preventing or in any manner interfering with the complainant's passing over and along said Dequindre street, to and from her said lots; and also from moving back upon her lots a certain fence, which complainant contends is now erected upon the true line of her said lots. The complainant claims that on September 10, 1892, the defendant, with a force of men, entered upon these lands, and commenced to tear down and move back the said fence some three feet upon her lots. She also claims that a sidewalk had for more than 30 years existed along the said Dequindre street, next to her said lots, which had been used by her and her grantors and others of the public for ingress and egress to and from said lots to Gratiot avenue and Jay street, and that said way was the only way thereto; that about 8 years before filing her bill the defendant filled said street with earth, covering said walk, but that complainant and others of the public have continued to use said street as of right of such ingress and egress for more than 30 years, and therefore have acquired a right of way by user, which defendant now threatens to close against her and others of the public. The defendant denies that the premises have been held adversely to it.

It appears that prior to 1836 one Antoine Dequindre was the owner of land extending from the Detroit river to the westerly line of the city of Detroit. These lots were a part of those lands. Adjoining these lands on the east was a 40-foot strip. On May 24, 1836, a written agreement was entered into between Dequindre and the Detroit & Pontiac Railroad Company, by which the said company acquired this strip for a right of way for its tracks. The railroad company at once entered into possession of this entire strip, leaving no portion thereof open to street travel. In October, 1836, Dequindre conveyed the lands to Peter J. Desnoyers, in trust for creditors, subject to the railroad company's right of way. In February, 1840, Dequindre and Desnoyers made a plat of the Dequindre farm, which plat, it appears, was not

properly executed and acknowledged, and never became entitled to record; but by said plat Dequindre and Desnoyers attempted to dedicate said 40-foot strip to street uses, in utter disregard of the rights of the railroad company.

In 1843, Dequindre died intestate, and in 1845 Desnoyers reconveyed to the Dequindre heirs all that part of said lands not disposed of. Partition proceedings were thereafter had, and said lot 53 was allotted to John Watson. No part of the 40-foot strip was partitioned. The lots partitioned were not described as abutting on any street, but as bearing certain numbers in certain blocks of the Dequindre farm, according to the plat.

In 1851, Watson and some of the Dequindre heirs claimed to own said strip of land discharged of the claims of the Detroit & Pontiac Railroad Company, whereupon the said railroad company purchased from Watson and others all their claim and title to said strip; and since December 27, 1851, the defendant railroad company, claiming all the rights of the Detroit & Pontiac Railroad Company, has actually occupied the entire strip as owner, and its possession thereof has been open and notorious. All of the lots so platted, except five, from the Dequindre farm, were made to front on streets, among which were the complainant's lots. These lots were accessible by interior alleys, and no other lots were so accessible. The complainant's grantors well knew the situation of these lots at the time of their allotment to and purchase by them.

In 1871 the abutting owners of lots along this 40-foot strip, and the city of Detroit, set up a claim that this strip was a public street. The city filed a bill against the defendant company in the Wayne circuit, in chancery. to enjoin its use by the company. The cause was heard on appeal in this Court, and a decree entered here, holding that the strip was not a public street, but the private property of the railroad company. *City of Detroit v. Railroad Co.*, 23 Mich. 173.

At the time the father of the complainant purchased lot 53, the railroad company was in possession of the strip, using it as its right of way, and occupying it by its tracks. Under its charter it had the right to hold 100 feet in width for such purposes. At the time complainant's grantor purchased lot 55 the chancery case had been decided in this Court, holding that this strip was the private property of the defendant company. After the decision of that case in this Court in 1871, the defendant at once began to warn the public of its exclusive right to said strip, as owner thereof, by placing signs along the extent thereof, and one of which was placed near the complainant's property, which read: "No way here. Railroad property."

In 1883, Emil A. Tapert, being the owner of lot 54, abutting on said strip, filed his bill against the defendant company to prevent it from occupying the strip by laying another track, his claim being that he had a right of way over it appurtenant to his lot. That case was heard in this Court on appeal, and the complainant's right denied, and again it was held that the defendant company had the exclusive right over said strip. It was said that the defendant's title had vested and become absolute before the complainant's title had passed out of the representatives of the estate. *Tapert v. Railway Co.*, 50 Mich. 267. The defendant has since that time been in possession of said strip, keeping the signs posted up, notifying the public that it is railroad premises.

It is therefore apparent that the complainant here has no rights over this strip, though she may, with the public, have gone over it to gain access to her premises. The railroad company had the right at all times since its purchase to exclude the public and the complainant from the premises. The mere fact that the defendant company knew that the public and the complainant were passing and repassing there would not create a right in the public or complainant to continue such passage. Elliott, Roads & S. p. 130; *Stewart v. Frink*, 94 N. C. 487.

It appears that several years ago the defendant company claimed that the fence in front of complainant's lots encroached on its right of way. Several persons owning abutting lots on that side moved their fences back, opening up the strip to its entire width. In 1877 the defendant company, claiming that it had a right to the full width of this 40-foot strip, commenced to move the fence back, but was stopped by Mr. Andries, the then owner of the lot. Again, in 1887, the defendant attempted to move the fence, and was again stopped by the husband of the complainant. The fence has been built there many years, but the true line has been in dispute, and the defendant contends that there has been no acquiescence such as would permit the complainant to hold the strip by adverse possession. The bill seeks to restrain the defendant from interfering with complainant's possession and occupancy of the strip in dispute, and to establish the line where the fence is as the true line, and to perpetually enjoin the defendant from interfering with her possession.

As we have seen, the bill cannot be maintained upon the first proposition; that is, as establishing the right of way of the complainant over these premises. Can it be maintained to settle the dispute over this boundary line? We think not. The principle of injunctive relief against a tort is that, whenever damage is caused or threatened to property, admitted or legally adjudged to be the plaintiff's, by an act of the defendant, admitted or legally adjudged to be a civil wrong, and such damage is not adequately remediable at law, the inadequacy of the remedy at law is a sufficient equity, and will warrant an injunction against the commission or continuance of the wrong. Adams, Eq. p. 207. Here there is a controversy over the boundary, each party claiming a legal right. The boundary is not settled, and the land has never been adjudged to belong to the complainant. It is held that a party whose right to land has not been established at

law will not be protected by injunction against a suit to recover the land. Hil. Inj. 279. That there has been an act of trespass does not give the complainant the right to proceed in equity, and the bill is not framed to enjoin irreparable injury from repeated acts of trespass, but to settle the boundary. The remedy is clearly at law, and not in a court of equity. *Wykes v. Ringleberg,* 49 Mich. 567; *Kilgannon v. Jenkinson,* 51 Id. 240; *Bresler v. Pitts,* 58 Id. 347. In *Kilgannon v. Jenkinson,* it was said:

"A full review of the proceedings makes it entirely clear that the fundamental dispute is about the correct position of the line between lots 3 and 7. * * * The result is that the case in the record is not one of which a court of equity is authorized to take cognizance. The grievance implies legal remedies, and there are no elements to divest the jurisdiction at law, and entitle equity to deal with the controversy."

From these considerations it is evident that complainant is not entitled to any equitable relief.

The decree of the court below must be affirmed, with costs of both courts.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. McGRATH, C. J., did not sit.