F. H. WOLF BRICK CO. *v.* LONYO.

1. EQUITY JURISDICTION—BILL TO QUIET TITLE—BOUNDARIES.
   Where a party is in possession of a tract of land, claiming title, to a line which has been recognized and acquiesced in for the statutory period, equity has jurisdiction to enjoin the owner of the adjoining premises from moving the boundary fence upon the premises so occupied.

2. SAME—EJECTMENT.
   Where a bill to quiet title alleged that defendant moved a portion of the line fence upon the premises, which complainant had occupied under claim of title for upwards of 20 years, and that defendant disputed complainant's title, and defendant, without demurring, answered and took proofs, he could not insist upon the final hearing that he was entitled to have the issue tried in an action of ejectment.

3. BOUNDARIES—ACQUIESCENCE.
   Where a fence has been established and recognized by the adjoining proprietors as on the true line for more than 20 years, such boundary will not be disturbed, although it may not have been originally placed on the true line.

Appeal from Wayne; Hosmer, J. Submitted October 14, 1902. (Docket No. 47.) Decided January 27, 1903.

Bill by the F. H. Wolf Brick Company against Andrew Lonyo to enjoin the removal of a line fence. From a decree dismissing the bill, complainant appeals. Reversed.

Complainant and defendant own adjoining lands. The bill of complaint alleges that the line fence between them has been established for more than 20 years; that complainant purchased its land in 1886; that the line fence was then worn out and broken down in some places, and it erected another fence in place thereof; that such fence has remained ever since, and been recognized by the parties as the true line; that on July 17, 1901, defendant attempted to tear down this fence, and did in fact tear down about 100 feet thereof, with the intention of erecting a new line fence 6 feet easterly of the old fence; that complainant is informed that defendant claims that the true line commences at a point 6 feet east of the present line fence; that complainant immediately notified defendant of its rights, and not to interfere with or move the fence. The prayer is for a perpetual injunction against the defendant, prohibiting the removal of the fence. The bill was filed July 18, 1901.

Defendant answered, denying all the material allegations of the bill; alleging that said fence was not on the line; that it had been moved, removed, shifted, and rebuilt a number of times; that some of the ground (removed for the purpose of making brick) had been taken away, and the fence rebuilt, "but not upon any line that had been established by survey, agreement, or otherwise." The answer further admits that the defendant did, on July 17th, tear down a part of said fence near the south end, and erect the same upon what he claimed to be the true line, and that he intended to take up all the old fence, and place it upon the line which he claimed to be the true one.

Replication was duly filed, and proofs taken in open court. The court did not pass upon the merits of the controversy, but dismissed complainant's bill upon the sole ground that the jurisdiction of a court of equity had not been properly invoked by the complainant.

*Edwin F. Conely* and *Orla B. Taylor*, for complainant.

*Richard I. Lawson*, for defendant.

Grant, J. (*after stating the facts*).   1. The court did not find that complainant was not in possession, but dismissed the bill upon the sole ground that there was a dispute as to the boundary line, which should be tried in a suit at law.   That complainant was in possession on the 17th day of July, when defendant commenced to remove the fence, is clearly established by the evidence.   It, being in possession, could not bring an action of ejectment; the defendant could.   It was his clear duty to do so, rather than to attempt by force to remove this old fence to the line which he claimed.   *Wilmarth* v. *Woodcock*, 66 Mich. 331, 336 (33 N. W. 400).   Complainant was under no obligation to stand by, see the defendant build the fence upon another line, and then bring an action of ejectment.   Defendant could not prevent complainant from maintaining this action by the removal of a small portion of the fence.   It invoked the aid of the court to restrain this unjustifiable action on the part of the defendant as soon as it learned that he had commenced such removal.   It moved seasonably.   The right to maintain this action is clearly sustained by the following decisions of this court: *Stewart* v. *Carleton*, 31 Mich. 270; *Wilmarth* v. *Woodcock*, 58 Mich. 482 (25 N. W. 475); *Vier* v. *City of Detroit*, 111 Mich. 646 (70 N. W. 139); *Campbell* v. *Kent Circuit Judge*, 111 Mich. 575 (70 N. W. 141).   In *Campbell* v. *Kent Circuit Judge*, in an opinion by my Brother Montgomery, the cases relied upon by the defendant to sustain his contention are distinguished from cases like this.

Counsel for defendant cites and relies upon *Bresler* v. *Pitts*, 58 Mich. 347 (25 N. W. 311), and *Andries* v. *Railway Co.*, 105 Mich. 557 (63 N. W. 526).   In *Bresler* v. *Pitts* the express object and prayer of the bill were to settle the boundary lines of complainants' estate.   The bill

alleged that "the location of the 40-feet line [the line in dispute, described in the deed as "a line 40 feet above the border of the river at high-water mark"] is uncertain, and difficult of determination, and that the parties dispute their boundaries." It was properly held that a bill in equity will not lie for the sole purpose of settling disputed boundaries.

*Andries* v. *Railway Co.* is a similar case. The main object of the bill was "to establish the line where the fence is as the true line." No doubt in fact existed as to the location of the true line. Two former suits brought to this court involving the issue had settled the true boundary line against the contention of the complainant. *City of Detroit* v. *Railroad Co.*, 23 Mich. 173; *Tapert* v. *Railway Co.*, 50 Mich. 267 (15 N. W. 450). The other lot owners had built their fences in accordance with those decisions. The railway company not only had not acquiesced in this fence as the boundary line, but had always disputed it.

The language of those cases applies where a boundary line is sought to be established, and not where a party is in possession, claiming as owner, with the line surveyed as the original line recognized and acquiesced in as the true line for from 20 to 30 years. The rule of those cases applies where there is a well-recognized dispute as to the true boundary line, and the purpose of the bill is to ascertain and establish it. Under the allegations of this bill, as well as the proofs, there never was any such dispute until the defendant undertook to remove this fence by force, and thus compel the complainant to resort to the law when he himself was in position to bring a suit at law in an orderly and proper way if he chose to do it. To give defendant such a right would be a reproach to the law. This case comes clearly within the statute.[1]

2. Complainant's bill showed that defendant disputed complainant's title. If he denied the jurisdiction of the court to test the question, it was his duty to demur to the

[1] 1 Comp. Laws, § 448.

bill. By answering, he voluntarily submitted this question to the court, and cannot now be heard to deny its jurisdiction. *Stockton* v. *Williams*, Walk. Ch. 120, 127. Where possession is alleged, and is denied by the answer, a question of fact as to possession is presented, and we do not hold that in such a case, if the evidence should disclose that complainant was out of possession, a suit in equity could be maintained.

3. It is unnecessary to go into details upon the merits. We are entirely satisfied that complainant has proved by a clear preponderance of evidence that the fence had been established and recognized by both parties as on the true line for a period of more than 20 years. Whether this fence was originally established upon the true line is a question foreclosed by the acquiescence of the parties.

"A long-established fence is better evidence of actual boundaries settled by practical location than any survey made after the monuments of the original survey have disappeared."

"Long practical acquiescence in a boundary between the parties concerned may constitute such an agreement on it as to be conclusive, even if it had been erroneously located." *Diehl* v. *Zanger*, 39 Mich. 601.

See, also, *Husted* v. *Willoughby*, 117 Mich. 56 (75 N. W. 279), and authorities there cited.

The decree is reversed, with costs, and decree entered in this court for the complainant.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred.