WEISSERT *v.* FULLER.

1. BOUNDARIES—ADEQUATE REMEDY AT LAW—EQUITY—QUIETING TITLE.

  While it is recognized that courts of equity may pass upon or locate boundary lines as an incident of issues properly within chancery jurisdiction, the rule is well settled that they have no inherent and independent jurisdiction to determine the true location of disputed boundaries.

2. SAME—BILL OF COMPLAINT.

  In a suit to quiet title to a strip of land, 2½ feet in width, lying between complainant's lot and an adjoining parcel, the bill which asked for no distinctively equitable relief and claimed no land except that to which she was entitled under her conveyance, was open to the objection that complainant had an adequate remedy at law, and the averments of the bill as to possession in complainant having been denied, the trial court properly dismissed the proceeding.

Appeal from Barry; Davis, J., presiding. Submitted April 22, 1915. (Docket No. 62.) Decided September 29, 1915.

Bill by Della Weissert against Roy C. Fuller and Didama Fuller to quiet title to certain real property. From a decree for defendants, complainant appeals. Affirmed.

*Thomas Sullivan,* for complainant.

*Lee H. Pryor* and *Colgrove & Potter,* for defendants.

STEERE, J. Complainant is owner by record title of the north halves of two adjacent lots, numbered 965 and 966, of the original plat of the city of Hastings, Mich. Defendant Roy C. Fuller owns of record the south half of said lots; defendant Didama Fuller being

his wife. This litigation is over the true location of the dividing line between their holdings. The two lots are, according to the plat, each 4 by 8 rods, being 66 feet wide east and west, and 132 feet long north and south; the north end of each fronting on the south side of Walnut street, which extends east and west. Lot 965 joins 966 on the west, and is a corner lot at the southeast corner of Walnut and Jefferson streets, extending its entire length of 132 feet along the east line of the latter street, which runs north and south.

Long before the parties to this suit acquired their titles, the two lots had been divided east and west; one party owning and occupying the two north halves and another the south halves. This gave each a frontage of 66 feet on Jefferson street, with a depth of 132 feet, the north halves constituting a corner lot extending 132 feet along the south line of Walnut street. By their record titles the present owners have lots of the same size and frontage on Jefferson street, and both testify that all they ask or claim is the 66 feet on Jefferson street which their deeds entitle them to; but each contends that the other is claiming 2½ feet more than he or she is entitled to, and each claims possession of the 2½ feet in dispute.

The lots thus rearranged long ago have since been separately owned and occupied by distinct owners, who so far as this record discloses dwelt in harmony prior to this contention. After the present owners purchased, complainant moved the old house, located upon her lot, composed of the north halves of the original lots 965 and 966, farther south and rebuilt it. Defendants made no objection at the time, but subsequently had the property surveyed, with the usual accompaniment of setting stakes. They resided upon their property. Complainant, who lived in another part of the city, rented hers and held vicarious possession by tenants. The debated 2½ feet is part of the

yard, or yards, between the two houses, apparently in lawn, as it is indicated that the complacency with which certain of complainant's tenants suffer defendants to run their lawn mower over this strip, and even beyond, may have some bearing upon the respective claims as to who is in possession. The present diversity of views as to the true location of the dividing line between the north and south halves of these lots appears to have first become acute when complainant learned that defendant had extended a new cement walk which he built along the east side of Jefferson street in front of his place 2½ feet farther north than she claimed the line between them ran. Following this, at a time defendant and his family were away assisting in celebration of the national holiday, she constructed a fence, called by witnesses "the Fourth of July fence," on what she contends is the true line, as long ago agreed upon by former owners and where they had formerly built and maintained a line fence for many years. Beyond a temporary physical declaration of ownership and possession the so-called Fourth of July fence is of scant materiality, as it soon appears to have become obscure, just how is not clearly shown, though Mrs. Fuller in her testimony suggests:

"The boys that were there Hallowe'en night might have loosened the posts, and some of it has been broken down since."

On August 13, 1913, complainant filed this bill to quiet title to the 2½-foot strip in dispute, alleging ownership both by record title and long-continued peaceable possession from far beyond the statutory period up to and at the time of commencing suit, charging that—

"said Roy C. Fuller now claims and pretends that under and by virtue of his deed he is the owner of 2½ feet or thereabouts of the land lying north of the east and west boundary line dividing the north half of said

lots from the south half thereof, and that the boundary line as established, agreed upon, and recognized by your oratrix and her predecessors in title, for a period of 50 years or thereabouts, is not the true or correct boundary line dividing the north half of lots No. 965 and No. 966 from the south half thereof, but that said boundary line should be 2½ feet or thereabouts farther north than it now is, and now claims and pretends that your oratrix and her predecessors have never acquired title to said premises by deeds of conveyances in your oratrix's chain of title or by adverse possession or otherwise."

The relief asked for in said bill is that the court decree as follows:

"That the claim of the said Roy C. Fuller and Didama Fuller to the land, or any part thereof, where said east and west division fence has been located, and north therefrom is null and void as against your oratrix; and that the said Roy C. Fuller and Didama Fuller have no right, title, or interest in said lands or any part thereof; and that the said Roy C. Fuller and Didama Fuller may be decreed to have no right, title or interest whatever in and to said lands or any part thereof; and that your oratrix may have leave to cause such decree to be recorded in the office of the register of deeds for Barry county, Mich."

Defendants filed an answer in the nature of a cross-bill, with a demurrer clause, denying all material allegations in complainant's bill, alleging actual occupancy, control, and possession in themselves of the disputed strip, which was conveyed to them by their grantor, charging that complainant had intruded upon an alley or strip 8 feet 3 inches wide owned by them out of lot 967 running along the east side of her property, asking for relief in that particular and—

"that the boundary line of said premises be fixed and established upon the true line between the south half of lots 965 and 966 and the north half of said lots."

Upon the hearing testimony was introduced, much of it sharply in conflict, upon the question of posses-

sion at time of filing the bill, location of the true line according to surveys and measurements, and adverse possession to a defined and agreed line for the statutory period. The record contains no opinion of the trial court, beyond that disclosed by the decree, which sustained defendants' demurrer clause in their answer and dismissed the bill "without prejudice to complainant to begin an action at law."

A careful examination of the pleadings, proofs, and other proceedings clearly discloses that the primary and controlling issue is the true location of the dividing line between these adjoining properties. Neither party makes any claim beyond that involved in a boundary dispute. When that question is finally determined, the respective rights of the parties are settled. The bill is not framed to ask injunctive relief, but only for a quieted title to the disputed strip, based on an adjudication of where the dividing line is located. Complainant testifies:

"I just claim what the deed calls for, 66 feet from the monument, and I think that monument is at the northwest corner."

Defendant Fuller, when asked if he claimed more than his deed called for, said:

"That is what I am after, is my 66 feet. * * * I do not claim more than 66 feet, and would be glad to have it."

But complainant's counsel urge that this is not a dispute over a boundary line and say in their brief:

"The line has been well established and acquiesced in from 1883 until 1913, a period of 30 years. The complainant and her grantors have been in possession for a period of 50 years and upwards, and were in possession up until the filing of the bill of complaint in this case. The defendants now claim title to 2½ feet of complainant's land, of which she is and was in possession at the time the bill was filed. She had no

right of action against defendants, except in a suit to quiet title."

In such case she would have an action against them for trespass if they interfered with her possession, but the stated facts upon which the legal proposition is founded are denied by defendants, both in their pleadings and proofs. While it is recognized that courts of equity may pass upon a disputed boundary when incidental to and connected with other issues properly coming under some recognized head of equity jurisprudence, the rule is well settled that equity courts have no inherent and independent jurisdiction to determine the true location of disputed boundaries. *Wykes* v. *Ringleberg,* 49 Mich. 567 (14 N. W. 498) ; *Kilgannon* v. *Jenkinson,* 51 Mich. 240 (16 N. W. 390) ; *Bresler* v. *Pitts,* 58 Mich. 347 (25 N. W. 311) ; *Andries* v. *Railway Co.,* 105 Mich. 557 (63 N. W. 526) ; *Dolan* v. *Smith,* 147 Mich. 276 (110 N. W. 932). Ejectment and trespass are the customary, and ordinarily adequate, remedies at law by which disputed boundaries are settled.

The merits of this controversy, by which the rights of these parties must finally be determined, are not properly before the court in this suit; but it may be stated in further substantiation of the trial court, in dismissing complainant's bill, that she has not satisfactorily shown actual and exclusive possession in herself of the disputed strip at the time of filing her bill. It is indicated that the vicarious possession which she claimed through tenants was not of particular interest to them, while defendants by their pleadings and proofs have positively and unequivocally insisted that they were and are in full, open, and complete possession, which gives her an adequate remedy at law by ejectment. Her grievance implies legal remedies, and, as her bill is framed, is devoid of elements conferring jurisdiction upon a court of equity.

The decree of the court below, dismissing complainant's bill without prejudice to proceedings on the law side of the court, is sustained, with costs to defendants.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.