MARION v. BALSLEY.

SAME v. BLEIL.

ADVERSE POSSESSION—BOUNDARIES—ACQUIESCENCE.

Where a lane for its entire length was well defined and recognized as such for a period of more than 30 years, and was used as such openly, notoriously, adversely, and continuously, to reach adjoining properties, the long acquiescence of the parties in accepting the fences along the east and west sides of the lane as the boundary lines of their properties must now be held to be conclusive against them.[1]

---

[1]As to effect of acquiescence in boundary lines, see note in 4 L. R. A. 643.

Appeal from Wayne; Codd, J. Submitted October 25, 1916. (Docket No. 98.) Decided March 29, 1917.

Bill by Adolph N. Marion against George Balsley and others for an injunction restraining defendants from disturbing plaintiff's possession of certain real property. From a decree for defendants, plaintiff appeals. Affirmed.

*William E. Henze*, for appellant.

*John J. Danhof, Jr.* (*J. Walter Dohany* and *Frank E. Robson*, of counsel), for appellees Balsley.

*Paul W. Voorheis* (*Chas. H. Jasnowski*, of counsel), for appellee Bleil.

*Anderson, Wilcox & Lacy*, for appellee Wolf.

KUHN, J. By this litigation it is sought to determine the rights of the parties in a strip of land about 32 feet in width and running along the line between the land of the plaintiff and the defendants from a creek near Dix Road to the Michigan Central Railroad right of way in private claim 216 of Wayne county, Mich. Two suits were started by the plaintiff against the defendants for this purpose, which were subsequently consolidated inasmuch as they involved the same questions and the same facts. The decree of the lower court dismissed the bill of complaint and adjudged that the land in controversy was a right of way for the use of all parties whose land adjoined thereto for ingress and egress to and from their respective parcels of land.

In the year 1812, the United States granted a patent of private claim 216, an irregular piece of land containing approximately 360 acres, to James Baby. Defendants hold their land by mesne conveyances from James Baby, the first grant being made in 1809 to William Steers of the westerly part of said private

claim. All of the defendants' land lies in the said westerly part. Plaintiff claims from his grandfather, Charles Campau, and his land covers the easterly part of said private claim 216. There is no deed, and it does not appear how or when Charles Campau obtained title to this land. Neither does it appear where the exact division line between these two parts of the private claim is; the descriptions in the deeds involving the westerly part stating that the said land is bounded on the east by the land of Charles Campau, and the deeds involving the easterly part of the land stating that the said land is bounded on the west by the land of Conrad Schweitzer, who was one of the owners in the chain of title coming from James Baby.

The west side of the lane in controversy is fenced from the railroad track to within a few hundred feet of Steer's creek, the land becoming marshy at that point. The east side is fenced from the Dix Road to within a short distance of the railroad right of way. From 1858 to 1871 the Campau land was leased to Conrad Schweitzer, who at that time owned land west of the lane, and again from 1879 to 1889 Conrad Schweitzer leased the Campau land, and from 1899 to 1901 Freiderick Schweitzer leased the land.

On August 27, 1914, the plaintiff notified George Balsley, one of the defendants, that he would no longer permit or tolerate him to pass through the lane, claiming that the title to the lane was in him and that the use thereof by the other adjoining owners had been simply permissive. Obstructions to free access to the land led to further controversy, and finally to the present litigation.

There seems to be no dispute but that the lane originally ran from the Dix Road to a few hundred feet beyond where the home now occupied by the defendant Bleil is located on the bank of the creek, and that it was fenced on the east and west sides except along

the creek. As the land was gradually cleared, the lane was extended until it reached the upper end of the farm, where it was stopped by the right of way of the Michigan Central Railroad Company. Several buildings were at one time occupied along the lane. They were all removed except the Schweitzer home, now occupied by the defendant Bleil. There was also some testimony that there was a cemetery on the Schweitzer farm on the west side of the lane and that a number of old settlers were buried there.

Many witnesses were sworn as to the use which was made of the lane and as to the length of time of such use. It is unnecessary to here set forth in detail this testimony. It is sufficient to say that careful examination thereof satisfies us that the lane in question for its entire length was well defined and recognized as such for a period of more than 30 years, and that it has been used as such openly, notoriously, adversely, and continuously as a means of ingress and egress from the respective properties adjoining thereon. The long acquiescence of the parties in accepting the fences along the east and west sides of the lane as the boundary lines of their properties must now be held to be conclusive against them. See *Diehl* v. *Zanger*, 39 Mich. 601; *Smith* v. *Hamilton*, 20 Mich. 433 (4 Am. Rep. 398); *Joyce* v. *Williams*, 26 Mich. 332; *Stewart* v. *Carleton*, 31 Mich. 270; *Wolf Brick Co.* v. *Lonyo*, 132 Mich. 162, 166 (93 N. W. 251, 102 Am. St. Rep. 412).

The complainant having failed in sustaining by proof the allegations in the bill of complaint, the decree of the lower court is hereby affirmed, with costs to the defendants.

STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.