FARR v. CHILDS.

1. MORTGAGES—DEED AS MORTGAGE—EQUITY.
    Although a deed amounts in equity only to a mortgage, a deed is required to revest the title in the grantor.

2. SAME—CONSIDERATION.
    Where the grantee in a deed given for security merely conveyed to a third party at the grantor's request, on the payment of the debt, there was a valuable consideration.

3. EQUITY—JURISDICTION—QUIETING TITLE—TITLE TO LAND.
    A court of equity had jurisdiction to enter a decree quieting defendants' title on their cross-bill asking for affirmative relief, where the averments of plaintiff's bill setting up a claim of title in and possession of certain property and praying for an injunction preventing defendants from interfering with said possession were sufficient to clothe the court with jurisdiction of the parties and subject-matter, although a court of equity is not ordinarily the proper tribunal for the trial of title to real estate.

See note in 11 L. R. A. (N. S.) 209.

4. SAME—JURISDICTION.

The court of equity having once acquired jurisdiction, should retain same for the purpose of finally determining the rights of the parties and awarding complete relief.

5. SAME—MORTGAGES—DEED AS MORTGAGE—PAYMENT OF DEBT—ESTOPPEL.

Where the grantee in a deed given for security merely, at the oral request of the grantor, conveyed the premises direct to a prior mortgagee on the payment by the latter of the grantor's debt, the latter would be estopped from asserting any claim to the land, since he received a valuable consideration in the payment of his debt, and such transaction is not void under the statute of frauds.

6. APPEAL AND ERROR—QUESTION FOR REVIEW.

The question as to whether the husband alone could surrender a contract running to himself and wife, not having been raised in the court below, will not be considered by this court.

7. EQUITY—ASSIGNMENT OF CONTRACT INTEREST—CLEAN HANDS.

Where plaintiff, after a land contract had been paid by the grantee in a deed of the premises which was on record, and after a mortgage against same had been discharged of record, and after said grantee had taken possession of the premises, procured an assignment of the contract to himself, obtained surreptitious possession of the place, which he maintained by force, and thereafter invoked the aid of a court of equity to protect him therein, *held*, that plaintiff had violated the cardinal rule of equity and did not come into equity with clean hands.

Appeal from St. Clair; Tappan, J. Submitted October 17, 1918. (Docket No. 83.) Decided December 27, 1918.

Bill by John A. Farr against Charles A. Childs and another to restrain interference with the possession of a farm. Defendants filed a cross-bill to set aside plaintiff's deed and to quiet title. From a decree for defendants, plaintiff appeals. Affirmed.

*C. L. Benedict* and *J. F. Wilson*, for plaintiff.

*John B. McIlwain* and *Clair R. Black,* for defendants.

The bill in this case was filed by the plaintiff for the purpose of securing a preliminary and permanent injunction against defendant, preventing him from interfering with plaintiff's possession of a certain farm. Plaintiff's title was alleged to rest on a deed covering the premises made on March 8, 1918, by Cleston Minnie and Eleanor, his wife. A preliminary injunction was issued by the court, followed by a motion for its dissolution made on behalf of defendant. This motion was never decided. The defendant filed an answer and cross-bill. By said cross-bill defendant set up title and possession to the farm in question and prayed that the injunction issued against him might be vacated; that the deed under which plaintiff claimed title be declared to be void and that plaintiff be required to vacate said farm and deliver possession thereof to defendant. Upon the hearing a peculiar state of facts developed. Prior to September 7, 1916, Cleston Minnie and Eleanor, his wife, were the owners of the farm in question. On that date they gave a mortgage to one Louis Lobes for the sum of $800. About six months later and on February 27, 1917, they bought lumber from one James Dunn to the value of $75. Dunn, desiring security, a warranty deed of said premises was executed by Cleston Minnie and wife to Dunn on the last named date and a contract was executed by Dunn to Minnie and wife covering the same property. By the terms of the contract Dunn agreed to convey the property to Minnie and wife upon payment of $75 at the rate of $10 per month. Minnie never paid anything on account of the land contract but secured further lumber from Dunn amounting in value to about $50, which, it seems, was to be added to the sum due from him to Dunn under

the contract. Minnie thereafter paid nothing to Dunn, either principal or interest, on account of the land contract, nor to the original mortgagee, Lobes, on account of the $800 mortgage, nor did he pay the taxes assessed upon said farm. Lobes died July 20, 1917, leaving a last will and testament, by the terms of which the residue of his estate went to Nancy L. Childs, wife of defendant. This residue included the $800 mortgage on the Minnie farm. Defendant Charles A. Childs was the executor of the will of Louis Lobes. Desiring to close said estate he interviewed Minnie with reference to the payment of the $800 mortgage. The record shows beyond peradventure that Minnie told Childs that he was unable to pay anything upon the $800 mortgage; that he had conveyed the place to Dunn as security for lumber purchased from him, whom he was likewise unable to pay, and advised Childs that if he would pay Dunn the amount due from him to Dunn that a conveyance might be made from Dunn directly to Childs. Pursuant to this agreement Minnie instructed Dunn to convey the farm directly to Childs upon payment to him, Dunn, of the amount due to him from Minnie, whereupon Childs paid to Dunn the sum of $120 and received a warranty deed of the farm in question bearing date January 23, 1918, and recorded upon the same day. As soon as the deed was executed defendant visited the farm in question, which was unoccupied, closed and locked the door of the house, closed the door of the barn, and wired the front gate. On the next day, January 24, 1918, the defendant, as executor of the estate of Lobes, discharged the $800 mortgage of record.

It further appears that Minnie had purchased from plaintiff upon a contract certain furniture amounting to about $45. Some time in February or early in March plaintiff made an examination of the records

touching the title to said farm and discovered that the $800 mortgage had been discharged. Thereupon he entered into negotiations with Minnie's wife, the result of which was that on March 8, 1918, about six weeks after Dunn had conveyed to Childs, Minnie and wife deeded said property to plaintiff and assigned to him the land contract which they had received from Dunn heretofore described. Defendant testified that prior to the receipt of said deed and assignment by the plaintiff, he, Farr, had asked permission from Childs to place some horses in the barn upon said place. This permission Childs refused, but, nevertheless, having negotiated the trade with Minnie and a week before it was consummated, plaintiff caused to be delivered at the barn upon said place a load of hay and on about the 29th of March he made an arrangement with one Bronson to take possession of the place. The house was opened by use of a skeleton key and Bronson moved in. On the 18th of April defendant having learned of Bronson's entry he, with one or two others, attempted to eject Bronson from the premises by force. Plaintiff's son came to Bronson's assistance and the fracas ended in an armed neutrality, both defendant and Bronson occupying the house the night of the 18th. On the 19th of April the preliminary injunction in this case was served upon defendant and he left the premises in the possession of Bronson. While some of the facts as above stated are contradicted by the plaintiff or by witnesses in his behalf, the learned circuit judge who heard the case believed them to be sustained by the proofs. He filed an opinion which, after stating the facts, concludes as follows:

"1. It is my conclusion as a matter of law and fact that defendant Childs' petition for affirmative relief sets up a cause for relief in a court of chancery.

"2. That as between themselves, Childs and Minnie had a legal right to conclude the oral arrangement

whereby Childs should pay Minnie's debt to Dunn and Dunn should convey the premises to Childs.

"While it is the law that agreements and contracts for the transfer of title to real estate must be in writing, in this case Dunn acted for Minnie and executed the deed that Minnie would have executed.

"The transaction was entirely completed, the oral agreement consummated and Minnie's debt was paid by Childs as he agreed to do.

"Minnie could not attack the validity of this contract that was fully performed for him — Minnie, through Dunn—and fully performed by Childs by payment of Minnie's debt of $120, as agreed.

"And under the proofs of this case Farr as a subsequent assignee of Minnie cannot question the validity of the consummated contract that his assignor is estopped from attacking.

"3. It is further my conclusion as a matter of fact and law that plaintiff Farr had actual and constructive notice of Childs' possession of the premises in question under his deed from Dunn.

"For the reasons given, counsel for the defendant Childs may prepare and notice for settlement a decree, setting aside the deed from Minnie to Farr, L. 217, page 585, and dismissing plaintiff's petition."

From a decree rendered in accordance with said opinion plaintiff appeals.

BROOKE, J. (*after stating the facts*). Plaintiff in his original brief makes the contention that the only title held by defendants under their deed from Dunn is the assignment of a mortgage interest which was never foreclosed. While it is true that Minnie's deed to Dunn and the land contract back from Dunn to Minnie and wife were understood by the parties to operate as security, merely, for the payment to Dunn of the amount of Minnie's lumber bills, yet while the transaction amounted in equity to a mortgage it was nevertheless a deed in form and it required a deed from Dunn to revest the title in Minnie. *McArthur v. Robinson,* 104 Mich. 540. Dunn's title instead of

being reconveyed to Minnie was conveyed directly to defendants at Minnie's request and for a valuable consideration, to wit: the payment of Minnie's debt to Dunn, amounting to $120.

It is asserted that the answer and cross-bill should have been stricken from the files and no testimony received thereunder as being in violation of Circuit Court Rules No. 21, § 10, No. 24, § 1, and No. 26, § 2. With this view we are unable to agree. The bill set up a claim of title in and possession of the property in question and prayed for an injunction preventing defendants from interfering with said possession. The averments of the bill were clearly sufficient to clothe the court of equity with jurisdiction of the parties and subject-matter of the suit. The answer and cross-bill asserted title and possession in defendants and prayed that the deed under which plaintiff claimed title be declared invalid. While a court of equity is not ordinarily the proper tribunal for the trial of title to real estate (*Andries* v. *Railway Co.*, 105 Mich. 557, *Cromwell* v. *Hughes*, 144 Mich. 3), we are of opinion that where plaintiff himself had sought relief in a court of equity and had by the averments of his bill clothed it with jurisdiction, the court should retain same for the purpose of finally determining the rights of the parties and awarding complete relief. *Hall* v. *Nester*, 122 Mich. 141.

In the plaintiff's reply brief he argues that Minnie's oral instruction to Dunn to convey to Childs directly upon payment to Dunn by Childs of his, Minnie's, debt of $120, is insufficient under the statute of frauds (3 Comp. Laws 1915, § 11975); that what Minnie conveyed by his action was an interest in lands and therefore void under the statute. In this connection it must be remembered that the legal title stood in Dunn at the time Minnie instructed him to convey

to Childs; that he, Minnie, received a valuable consideration for said conveyance through the payment of his debt to Dunn and that the transaction was fully consummated by the payment of his debt and the making and delivery of the deed.    Under such circumstances, of course, Minnie would be held to be estopped from making any claim to the lands in question.    *Faxton* v. *Faxon*, 28 Mich. 159, 2 Herman on Estoppel, p. 1059.    A case in principle not to be distinguished from the one at bar is *Sullivan* v. *Dunham*, 42 Mich. 518.    In that case the vendee handed the land contract back to the vendor and the vendor conveyed the title to another.    The court said:

"For the particular purpose to be accomplished in this case, however, this was completely effectual, for it is not pretended that Gordy's title from Sullivan is defective for want of the written surrender.    This, however, does not appear to us important, as we think the judgment may be sustained on familiar principles.

"When the agreement sued upon was made between Sullivan and Dunham, each party was owner of an interest in the land which was afterwards traded with Gordy.    It was agreed between them that Sullivan might dispose of both interests to Gordy, accounting to Dunham for what he obtained, according to a certain basis which was agreed.    He did trade accordingly, and Dunham now calls upon him to account as he agreed.    Now it is of no importance whether or not the authority given by Dunham to Sullivan was sufficient in law; for, as already stated, the title has passed to Gordy, and if Sullivan's authority to trade with him was originally insufficient, Dunham by demanding his share of the price and bringing suit to recover, has affirmed the transaction, and ratified whatever was before imperfect.

"The agreement that Dunham should surrender his contract in order that the trade with Gordy might be made, evidently meant no more than this: that he should give up the contract and make no further claim under it.    It is not at all likely that the word 'surrender' was used or understood by the parties in any

technical sense.    Dunham was to permit Sullivan to
dispose of his interest in the land: that was the es-
sence of the agreement, and it had been complied with.
By his consent in the first place to what Sullivan pro-
posed, and his acquiescence afterwards, he has pre-
cluded himself from asserting any further rights un-
der the contract."

In the case at bar instead of handing his contract
to Dunn, Minnie asserted (falsely as it now appears),
that he had lost or mislaid the same.  See, also, *Miner*
v. *Boynton*, 129 Mich. 584.  It is finally asserted on
behalf of plaintiff that inasmuch as the contract from
Dunn ran to Minnie and wife, Minnie alone could not
surrender the same; citing *Bauer* v. *Long*, 147 Mich.
351.    Under the facts disclosed in this case we think
it fair to assume that Minnie, in the transaction, acted
for himself and his wife.    They had abandoned the
farm several months before the transaction in ques-
tion; had paid nothing upon either the $800 mort-
gage, the Dunn contract, or the taxes.    It is unnec-
essary, however, to pass upon this question as it was
not raised in the court below and therefore should not
be considered in this court.    *Gleason* v. *Stone*, 200
Mich. 187, and *Ward* v. *Carey*, 200 Mich. 217.

We think it quite clear from a perusal of this rec-
ord that plaintiff, after he discovered that the Lobes
mortgage was discharged, conceived the idea of ac-
quiring the farm in question for the amount of Min-
nie's debt to him plus $75 apparently due to Dunn.
In furtherance of this design he obtained surreptitious
possession of the place; maintained possession by
force and thereafter invoked the aid of a court of
equity to protect him therein.    As was said in the
case of *Toledo, etc., R. Co.* v. *Detroit, etc., R. Co.*, 61
Mich. 9:

"It needs no discussion to show that an injunction
against a party's holding his own possession is the

same thing as turning him out of possession, and is utterly illegal before a final decree."

Here defendant was in such possession of the property as its character and condition required and plaintiff's invasion thereof was clearly unwarranted and in our opinion in bad faith. Plaintiff by his acts has violated the cardinal principle of equity jurisprudence that he who seeks equity must come into court with clean hands. For this reason alone his bill should be dismissed.

The decree is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.